UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALLEN ERNEST BORNE                           CIVIL ACTION

VERSUS                                       NO. 09-4457

MICHAEL J. ASTRUE, COMMISSIONER             SECTION "C" (2)
OF SOCIAL SECURITY ADMINISTRATION

## ORDER ON MOTION, AND FINDINGS AND RECOMMENDATION

Plaintiff, Allen Ernest Borne, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

## I.   PROCEDURAL HISTORY

Borne filed applications for DIB and SSI on July 16, 2007, alleging disability since June 5, 2006, due to diabetes, a pinched nerve in his lower back, headaches, problems with reading, pain in his right arm and shoulder, blurred vision and high blood pressure. (Tr. 75-85, 107). After his applications were denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 5, 2009.

(Tr. 17-48). On March 26, 2009, the ALJ issued a decision denying plaintiff's applications. (Tr. 5-16). After the Appeals Council denied review on May 20, 2009, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ erred by failing to consider adequately how plaintiff's limited educational or intellectual abilities and his inability to read, multiply or divide limit his capacity to perform jobs existing in significant numbers in the national economy.

B.    The ALJ's determination of plaintiff's residual functional capacity is not supported by substantial evidence.

C.    The ALJ's finding that plaintiff could perform the job of mate is not supported by substantial evidence.

In addition, Borne filed a Motion to Remand for Consideration of New Evidence. Record Doc. No. 20. He contends that the new and material evidence attached to his motion demonstrates that the administrative record was inconclusive and incomplete, and that the new evidence supports his claim that he lacks the physical and mental abilities to sustain substantial gainful activity. He argues that the new evidence "provides the basis for remand, if not reversal," and urges the court to allow him the opportunity to present this evidence to an administrative hearing officer for consideration. The court

therefore treats this as a motion for leave to submit new evidence. IT IS ORDERED that

the motion is DENIED for the reasons stated below.

III.     <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings:

1.     Plaintiff has severe impairments, consisting of uncontrolled hypertension, diabetes mellitus and degenerative disk and joint disease. He was struck in the head by a piece of sheet metal at work in March 2006, when he sustained abrasions, contusions and neck pain. He also injured his neck, shoulder and back in a motor vehicle accident in October 2006.

2.     He has a non-severe impairment of headaches.

3.     Borne has the residual functional capacity to perform the full range of sedentary and light work.

4.     Although plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.     Borne cannot perform his past relevant work of deckhand, cook and oiler, which required medium exertion. However, he can perform his past relevant work as a mate.

6.     Plaintiff was 39 years old, has a limited education and is able to communicate in English.

7.     Considering his age, education, work experience and residual functional capacity, plaintiff can perform jobs that are available in significant numbers in the national economy, including information clerk, courier, production worker, hand packager, food preparer, cafeteria attendant and dishwasher.

(Tr. 10-16).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record

in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions

---

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." <u>Martinez</u>, 64 F.3d at 174.

B.    <u>Factual Background</u>

Borne testified that he was 42 years old and had completed the ninth grade. (Tr. 23).  He said he cannot read, but can read a stop sign and other signs because he has memorized the shapes.  He stated that he can recognize letters, but does not read the paper.  He testified that he has astigmatism and that he wears prescription glasses so he can see at distances.  (Tr. 24-25).

Plaintiff stated that he worked as a deckhand on a tugboat for Rainbow Marine Contractors and for Matt Frasier Transportation, but could not remember when he worked for either one.  He said his duties as a deckhand included painting the ship, tying barges, hooking up cables to barges, moving barges to docks and hooking up snatch lines and chafing boards to the cables.  He testified that he worked for AMC Liftboats on and off in 2004 as a cook on an offshore rig and also for Coastal Towing as a cook on a supply boat.  (Tr. 25-27).

Borne said he has a driver's license.  He stated that he initially failed the written test, but that the examiner saw that he could not read after he passed the driving test.  The examiner then read out loud to him the written questions that he had missed and he answered orally, so he passed the test.  (Tr. 27).  He testified that he does not read street

name signs.  He said that he only drives to places with which he is familiar and that his sister or a friend drives him when he has to go somewhere unfamiliar.  (Tr. 28, 31).

Plaintiff stated that he was driving a sick friend to the doctor in October 2006 when his car was rear-ended and he was injured by an 18-wheeler truck.  He said that a lawsuit concerning that accident was ongoing because the truck driver was not insured and that his claim for uninsured motorist's benefits from his own insurance company was pending.  (Tr. 28-29).  He stated that attorney Scott Fontenot was representing him in the lawsuit.  He did not recall the name of his insurance company and said that his sister would have to read him the name of the company from the paperwork he had.

Borne testified that he never went online to look for work and denied telling the consultative examiner, Dr. Talluri, in October 2007 that he spent most of his day online looking for work.  (Tr. 29).  He said his sister handles his paperwork for him, including job applications and going online.  He said he does not know how to use a computer or even how to turn it on and off.  He stated that he can add and subtract a little bit.

Plaintiff said he had been treated by the New Image Health and Wellness Center, but he had switched to Dr. Jackson.

Borne testified that he failed first grade and then was put into a special education class where the teachers helped the students with their work.  (Tr. 30-31).  He said he was in special education classes through the ninth grade.

Plaintiff stated that he gets migraine headaches almost every day and does not know what triggers them. He said that he has three fused discs in his neck and that a bone was taken from his hip for the fusion. He testified that two of his fingers were partially amputated. Borne said that his hands and feet are always numb and he cannot feel his feet. He stated that he is unable to get an erection since the car accident. He said his fused discs bother him when the weather is changing and when it is cold, but his neck is always tight and stiff and he cannot turn his head quickly. (Tr. 32). He testified that his stomach feels like he is on fire all the time.

Borne said he sees Dr. Jackson for blood pressure and diabetes medications, but that it is difficult to find the money to pay for the medications. He said his diabetes was diagnosed about four years earlier and that, as a result, his vision is blurry and he cannot see to drive at night. He said his daytime vision is only blurry when he has bad headaches. He stated that he hears a ringing in his ears once in a while and that his high blood pressure makes him feel like he is on fire. (Tr. 33). He testified that he urinates a lot, as often as every 30 to 60 minutes.

Plaintiff stated that he does not sleep well. He said he usually goes to bed at 10 p.m. but tosses and turns until he falls asleep around 2:00 or 3:00 a.m., then he wakes up at 6:00 or 7:00 a.m. He testified that he is very tired during the day and that his high blood pressure makes him feel weak.

Borne said he is able to dress himself, but he has to sit down and pick up his feet to put his socks on. He stated that he wears slip-on shoes because of his back pain, so that he never has to bend over to tie his shoes. (Tr. 34). He said he has a sharp pain all the time in his back and his hip since his accidents. He testified that he was paralyzed and could not feel his feet or his legs for a while when he was hospitalized after the truck hit him.

Plaintiff stated that, on a typical day, after dressing himself, he goes to his sister's house, which is in the same yard as his own. He said he cooks a hamburger and French fries for himself, but does not cook big meals any more because he cannot stand up at the stove for long. (Tr. 35). He testified that he can stand for about 45 minutes at a time, for a total of two to three hours in a twelve-hour day. He stated that his back starts to hurt and he cannot feel his feet if he stands for long. He said he sometimes does not wear shoes so he can feel his feet. He testified that it feels like a rope tightening on his feet and hands.

Borne said he has had these problems constantly for a couple of years. He stated that, after the hearing, his feet would be numb. He said he would go home, kick off his shoes and be unable to feel his feet to walk. He said he knows that a diabetic should not walk barefoot, but that it is the only way he can feel his feet at the end of the day. (Tr. 36). He testified that his lower back and his hip hurt when sitting and that he moves

10

around to try to get comfortable. He estimated he could sit for about 20 to 30 minutes before the pain would force him to stand up and move around.

Plaintiff said he washes laundry in small batches and goes to the grocery store to buy something to eat or drink. He said he only drives in the daytime and can drive for 45 minutes to an hour before he needs to pull over and move around. (Tr. 37). He stated that he goes to the grocery store for just a few items at a time. He testified that his sister goes with him to help pick out the groceries and carry them to the truck for him. He said he can pick up and carry a gallon of milk at the most, which he always picks up from the middle shelf, not from the bottom.

Borne testified that he can walk 250 to 300 yards before he needs to sit down and rest. He said he does no yard work or chores around the house, other than cooking for himself and washing a few dishes. He stated that he lives with his father, stays with him during the day and does nothing for fun. (Tr. 38). He said he has one friend with whom he goes out to dinner about once a week, and that his friend pays for his meal. He testified that he smokes about one pack of cigarettes per day, which his father buys for him. (Tr. 38-39). He stated that he went to a show a couple of months earlier, but he had to leave because he could not handle being in a crowd and it makes him paranoid.

Plaintiff testified that he began having migraine headaches after he was hit in the head in the accident at work in March 2006. He said he had headaches before that date,

but nothing like the ones he gets now.  He said the headaches come and go, but he gets them every day.  (Tr. 40).  He stated that the pain in his lower back is steady and that it is worse in cold weather, when he will stay in bed most of the time.  Borne said the pain is better on some days than on others.  He stated that the numbness in his feet and hands is constant, but is a little better when the weather is warmer.  He testified that it feels like needles or like his body is on fire in the winter.  (Tr. 41).  He said that his toenails are now falling off.

Plaintiff admitted that Dr. Jackson's notes say that his pain has improved with medications and that he is supposed to take the medications every day.  He stated that the medications relieve the pain a little bit so that the pain is not as bad as it is without the medications.  He said Dr. Jackson has never discussed with him why he gets boils, but has told him how to treat the boils.  (Tr. 42).

Borne testified that his father buys his pain medications for him.  He stated that his father takes the same diabetes and blood pressure medications as he does, which  his father is able to buy very cheaply.  He said that he shares his father's prescription drugs for those conditions, but that he only takes them about three times per week, instead of every day.  He explained that this is the only way he can get those drugs because he has virtually no money.  (Tr. 47-48).

C.    <u>Vocational Expert Testimony</u>

A vocational expert, Carla Seyler, testified at the hearing. She stated that Borne's past relevant jobs as a cook and an oiler are classified as medium, semi-skilled work. She said a deckhand job is classified as heavy and semi-skilled, while a mate's work on a vessel is considered light and skilled. (Tr. 43).

The ALJ posed a hypothetical of an individual with a medically determinable impairment who is limited to sedentary and light work. Seyler testified that the only past relevant work the person could perform was as a mate. The ALJ modified the hypothetical to include slight to moderate limitations in the person's ability to maintain attention and concentration for extended periods and to complete work tasks at a consistent pace in a normal work day. Seyler stated that such an individual could still perform the job of mate.

The ALJ asked whether jobs would be available in the national economy for a younger individual with a ninth grade education, a limited ability to read and write and the same residual functional capacity as previously stated. The vocational expert testified that jobs are available in Louisiana, such as information clerk, courier, production worker, hand packager, food preparer, cafeteria attendant and dishwasher, for a person with that residual functional capacity. (Tr. 44-45). She stated that all of these jobs are

available in the light exertional category, and that sedentary jobs are also available as an information clerk, a production worker, a hand packager and a security guard. (Tr. 45).

The ALJ then modified the hypothetical to include marked limitations in the person's ability to maintain attention and concentration for extended periods and to complete work tasks at a consistent pace in a normal work day. Seyler stated that no work would be available for such a person.

Upon cross-examination by plaintiff's attorney, Seyler testified that there would be only a minimal number of jobs available if the hypothetical person needed to take a ten-minute break every 45 minutes. (Tr. 46-47).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 12-14). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    Plaintiff's Motion to Remand for Consideration of New Evidence is Denied.

Borne attached to his Motion to Remand for Consideration of New Evidence two exhibits that are not in the administrative record. Record Doc. Nos. 20-2 and 20-3, Plaintiff's Exhs. 1 and 3. Plaintiff's Exhibit 1 is a four-page report dated June 6, 2009

of his evaluation by a neurologist, Morteza Shamsnia, M.D.[3]  Plaintiff's Exhibit 3 is a

certified copy of 14 selected pages of medical records dated between June 17, 2009 and

February 8, 2010 from the Leonard J. Chabert Medical Center.  Plaintiff stated in his

motion that he was unable to file the entire 101-page Chabert Medical Center record

electronically.  Record Doc. No. 20, at p. 1, ¶ 2.

Borne argues that the new evidence confirms both his long-standing degenerative

disc disease, which "developed over the course of time, as well as ongoing disabilities,

such as the presence of spinal conditions that are known pain generators, or the observed

symptoms of concussions and apnea."  Record Doc. No. 20-1, plaintiff's memorandum

in support of motion, at p. 4.  Defendant filed a timely memorandum in opposition to

plaintiff's motion, arguing that the evidence is not material and that plaintiff did not

establish good cause for his failure to submit the evidence at the administrative level.

Record Doc. No. 25.

This court may <u>not</u> issue factual findings on new medical evidence and may

review such evidence only to determine if a remand to the Commissioner is appropriate.

<u>Spence v. Barnhart</u>, 159 Fed. Appx. 593, 2005 WL 3588441, at *2 (5th Cir. 2005);

---

[3]Although Borne states that Dr. Shamsnia's curriculum vitae is attached to his motion as Plaintiff's Exhibit 2, no such exhibit was filed.  Even if the curriculum vitae were attached, the court's ruling would not be affected.  The court accepts Borne's assertion that Dr. Shamsnia is board certified in neurology and psychiatry, which is apparent on the face of the doctor's report.  Plaintiff's Exh. 1.

Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989).  Accordingly, I must determine whether this case should be remanded so the Commissioner may consider the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing that the evidence is new and material and that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); Joubert v. Astrue, 287 Fed. Appx. 380, 2008 WL 2831286, at *3 (5th Cir. 2008) (citing Ripley, 67 F.3d at 555); Garson v. Barnhart, 162 Fed. Appx. 301, 2006 WL 73365, at *2 (5th Cir. 2006) (citing Leggett v. Chater, 67 F.3d 558, 567 (5th Cir. 1995)).

"Evidence which is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)."  Wilson v. Astrue, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987)) (emphasis added); accord Perkins v. Shalala, No. 93-01940, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Martin v. Barnhart, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (Vance, J.) (citing Pierre, 884 F.2d at 803).

In addition to being new, evidence must be material to serve as grounds for a remand.  The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied."  Castillo v. Barnhart, 325

F.3d 550, 551-52 (5th Cir. 2003) (citing <u>Ripley</u>, 67 F.3d at 555); <u>accord</u> <u>Joubert</u>, 2008 WL 2831286, at *3. This means that the new evidence cannot merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling. <u>Id.</u>; <u>Garson</u>, 2006 WL 73365, at *2.

Furthermore, "[f]or new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination." <u>Hunter v. Astrue</u>, 283 Fed. Appx. 261, 2008 WL 2510776, at *1 (5th Cir. 2008) (quotations omitted) (citing <u>Latham v. Shalala</u>, 36 F.3d 482, 483 (5th Cir. 1994); <u>Chaney v. Schweiker</u>, 659 F.2d 676, 679 (5th Cir. 1981)); <u>accord</u> <u>Jones v. Astrue</u>, 228 Fed. Appx. 403, 2007 WL 1017095, at *3 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)); <u>Brumbelow v. Apfel</u>, No. 3:00-CV-0803-L, 2001 WL 1543852, at *1 n.3 (N.D. Tex. Nov. 30, 2001) (citing <u>Latham</u>, 36 F.3d at 483; <u>Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985); <u>Chaney</u>, 659 F.2d at 679).

The medical records attached to plaintiff's motion reflect that he was evaluated by Dr. Shamsnia on June 6, 2009; was hospitalized for chest pain at Leonard J. Chabert Medical Center from June 17 through June 18, 2009 and was discharged in stable condition and with a good prognosis; and was seen at Chabert Medical Center as an outpatient on August 4, 2009, November 10, 2009 and February 8, 2010. Plaintiff has

failed to show that these reports are new and material, as defined by the Fifth Circuit, for the following reasons.

First, the relevant time period to establish disability is from plaintiff's alleged disability onset date of June 5, 2006, through March 26, 2009, the date of the ALJ's decision. The submitted records are dated from three to eleven months <u>after</u> the ALJ's decision. Because these reports do not relate to the period for which benefits were denied, they are immaterial. <u>Sanchez v. Barnhart</u>, 75 Fed. Appx. 268, 2003 WL 22121013, at *1 (5th Cir. 2003) (citing <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)); <u>Falco v. Shalala</u>, 27 F.3d 160, 164 (5th Cir. 1994).

Second, plaintiff has failed to demonstrate a reasonable possibility that the new evidence would change the outcome of the Commissioner's decision. Borne asserts that these records show that his long-standing degenerative disc disease developed over the course of time. The administrative record leaves no doubt that his degenerative disc disease developed over time. Even the earliest medical report stated that he had chronic lower back problems and a prior cervical disc fusion (Tr. 140), while the record for the next three years documented his ongoing neck and back problems. Based on that evidence, the ALJ found that Borne's degenerative disc and joint disease is a severe impairment, as are his uncontrolled hypertension and diabetes mellitus.

However, the ALJ found that Borne's impairments were not disabling. Nothing in the new evidence suggests that plaintiff's degenerative disc disease, hypertension or diabetes is the type of condition that follows such a well-known progression that a date of disability can be inferred after the fact without contemporaneous corroboration. Cohen v. Astrue, 258 Fed. Appx. 20, 2007 WL 4437229, at *8 (7th Cir. 2007) (citing Allord v. Barnhart, 455 F.3d 818, 822 (7th Cir. 2006)).

The new records contain no "express retrospective medical opinion relating back to the [relevant] period" that addresses the onset date of plaintiff's degenerative disc disease, hypertension or diabetes, McLendon v. Barnhart, 184 Fed. Appx. 430, 2006 WL 1662790, at *2 (5th Cir. 2006) (citing Likes v. Callahan, 112 F.3d 189 (5th Cir. 1997); Ivy v. Sullivan, 898 F.2d 1045 (5th Cir. 1990)), nor do any of the new records address the date when such long-standing conditions might have become disabling, if at all. Dr. Shamsnia's diagnoses include neck pain, low back pain, pain and paresthesias in the limbs, peripheral neuropathy, diabetes and hypertension. The Chabert Medical Center records similarly document plaintiff's uncontrolled hypertension, diabetes, migraine headaches and pain in his lower back, neck, knees and feet. An MRI of Borne's lumbar spine dated November 25, 2009, Record Doc. No. 20-3, at pp. 7-8, is consistent with the results of a similar MRI taken on September 14, 2007. (Tr. 186). Evidence of all the symptoms and diagnoses by Dr. Shamsnia and the doctors at Chabert Medical Center

relative to plaintiff's degenerative disc disease, hypertension, diabetes and migraine headaches was in the records on which the ALJ based his decision.

Therefore, the new records are not new, but are merely cumulative, and there is no reasonable possibility that they would change the outcome of the Commissioner's decision. Lenoir v. Apfel, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000) (citing Haywood, 888 F.2d at 1471; Pierre, 884 F.2d at 803).

Dr. Shamsnia may have observed some increased symptoms of plaintiff's medical problems, such as nausea and visual symptoms associated with his daily headaches, significant sensory loss in both upper and lower extremities and a lack of reflexes in both upper and lower extremities. Dr. Shamsnia also diagnosed "possible sleep apnea," a possibility that no previous treating or examining doctor ever mentioned, albeit one that Dr. Shamsnia neither diagnosed definitively nor for which he rendered an opinion concerning its onset date. Similarly, to the extent that the results of an MRI of plaintiff's lumbar spine and another of his thoracic spine on November 25, 2009 at Chabert Medical Center, Record Doc. No. 20-3, at pp. 7-10, might show any increased or newly diagnosed findings, these records demonstrate at best a deterioration of a previously non-disabling condition. There is no reasonable possibility that the new evidence would have affected the ALJ's determination that plaintiff was not disabled. "Remand can not be based on

new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition."  Lenoir, 2000 WL 1568184, at *1.

Moreover, the Chabert Medical Center record dated February 8, 2010 noted that Borne reported that his right hip and lower back pain began after a motor vehicle accident on October 9, 2008, while the medical record dated November 10, 2009 stated that "he has low back pain present for [a] couple of months post-[motor vehicle accident]."  Record Doc. No. 20-3, at pp. 2, 3.  If plaintiff was indeed involved in a motor vehicle accident in either October 2008 (which he failed to report in his testimony on February 5, 2009) or around September 2009 (six months after the ALJ's decision), in addition to the one that occurred on October 18, 2006 (Tr. 171, 175, 178), the more recent accident could have caused any deterioration or increased symptoms that appear in the new records.  Again, deterioration in plaintiff's previously non-disabling condition that resulted from such an accident would render the new medical records immaterial to the ALJ's decision.  Lenoir, 2000 WL 1568184, at *1.

The only possibly retrospective opinion in the new evidence is Dr. Shamsnia's diagnostic impression that Borne has "postconcussion syndrome with headaches."  This diagnosis was based on the symptoms that Borne described to Dr. Shamsnia, Borne's responses to a head trauma questionnaire for Dr. Shamsnia and the report of a CT scan

of his brain taken after plaintiff was struck in the head by a piece of metal on March 29, 2006, which Dr. Shamsnia reviewed.  Record Doc. No. 20-2, Plaintiff's Exh. 1.

A concussion "is characterized by transient posttraumatic loss of consciousness unaccompanied by gross structural lesions in the brain or leaving serious neurologic residua." The Merck Manual of Diagnosis and Therapy 1460 (Robert Berkow & Andrew J. Fletcher, eds., 16th ed. 1992).  Dr. Shamsnia mentioned plaintiff's loss of consciousness at least twice in his report.  Record Doc. No. 20-2, at pp. 1, 2. Postconcussion syndrome "includ[es] a variety of imprecise perceptual symptoms, but lack[s] objective defects.  After a mild head injury, headache, dizziness, difficulty in concentration, variable amnesia, depression, apathy, and anxiety are common . . . ." Merck Manual at 1463.

Borne's statement to Dr. Shamsnia, more than three years after his head injury, that he suffered a loss of consciousness during the March 2006 accident is not supported by the contemporaneous medical records.  Those records repeatedly stated that Borne suffered no loss of consciousness and noted that he did not even fall to the ground when he was struck in the head.  (Tr. 140, 157, 159, 162, 164).  No physician previously diagnosed a concussion or postconcussion syndrome, either in the emergency room at Lady of the Sea Hospital on March 29, 2006 (Tr. 140-41); when Borne was admitted to

West Jefferson Hospital the next day for a neurological work up (Tr. 149-66); or during his treatment by multiple physicians over the next three years.

Borne argues that "the Commissioner would necessarily have to give [Dr. Shamsnia's] opinions great weight" (citing 20 C.F.R. § 404.1527(d), 416.927(d)) because he is plaintiff's treating physician and a board certified specialist. Record Doc. No. 20-1, at pp. 4-5. However, the submitted records show that Dr. Shamsnia saw Borne only once, which means that Dr. Shamsnia is <u>not</u> a treating physician as defined by the Commissioner's regulations and his opinion would <u>not</u> be accorded the controlling weight usually given to treating physicians. <u>Hernandez v. Astrue</u>, 278 Fed. Appx. 333, 2008 WL 2037273, at *6 & n.4 (5th Cir. May 13, 2008) (citing 20 C.F.R. § 404.1502).

In addition, although

> the opinion of a specialist generally is accorded greater weight than that of a non-specialist, . . . the ALJ has sole responsibility for determining a claimant's disability status. The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. . . . The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of [any opinion when the] . . . physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

<u>Newton v. Apfel</u>, 209 F.3d 448, 455-56 (5th Cir. 2000) (quotations and citations omitted).

The ALJ would be entitled to accord <u>no</u> weight to Dr. Shamsnia's diagnosis of postconcussion syndrome because it is based on Borne's erroneous report that he suffered a loss of consciousness during his March 2006 accident, which appears to be a prerequisite for a concussion diagnosis, as Dr. Shamsnia himself emphasized in his report. Similarly, there is no reasonable possibility that Dr. Shamsnia's diagnosis of "possible sleep apnea," unsupported by any objective tests, would lead the ALJ to a different decision. Dr. Shamsnia noted that sleep studies were necessary to confirm the possibility. Moreover, plaintiff does not explain how sleep apnea, even if he had it during the relevant time period, is functionally disabling.

"While a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability and not simply express an opinion to the claimant's current status. Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status." <u>McLendon</u>, 2006 WL 1662790, at *2. Thus, that portion of plaintiff's new evidence in this case that is actually new and not merely cumulative of the administrative record, including the new diagnoses of postconcussion syndrome and possible sleep apnea, "when considered in light of the entire record, does not establish the existence of [plaintiff's] severe medical impairment as far back as [the alleged onset] date." <u>Id.</u>

Furthermore, the mere diagnosis of an impairment is insufficient, in itself, to sustain a finding of disability.  20 C.F.R. § 416.925(d); <u>Martin v. Chater</u>, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing <u>Anderson v. Sullivan</u>, 925 F.2d 220, 222 (7th Cir. 1991)); <u>accord</u> <u>Harris v. Barnhart</u>, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); <u>Estok v. Apfel</u>, 152 F.3d 636, 640 (7th Cir. 1998); <u>Jones v. Sullivan</u>, 954 F.2d 125, 128 (3d Cir. 1991); <u>Arroyo v. Secretary of Health & Human Servs.</u>, 932 F.2d 82, 87-88 (1st Cir. 1991); <u>Hames v. Heckler</u>, 707 F.2d 162, 165 (5th Cir. 1983).  For a diagnosed impairment that does not meet a listing to be disabling, plaintiff "must show that [he] was so <u>functionally impaired</u> by [his impairment] that [he] was precluded from engaging in any substantial gainful activity."  <u>Id.</u> (emphasis added); <u>accord</u> <u>Anthony v. Sullivan</u>, 954 F.2d 289, 293 (5th Cir. 1992).  Thus, the new diagnoses of postconcussion syndrome and possible sleep apnea, even if these conditions originally manifested during the relevant time period between plaintiff's alleged onset date and the ALJ's decision, do not by themselves require a finding of disability.

Borne emphasizes Dr. Shamsnia's opinion that he has "significant multiple medical problems" for which he "will need extensive work up, including an MRI" of his spine and brain.  However, plaintiff has not explained how any of the conditions diagnosed by Dr. Shamsnia, consisting of postconcussion syndrome with headaches, neck pain, low back pain, pain and paresthesias in the limbs, peripheral neuropathy,

diabetes, hypertension and possible sleep apnea, or the conditions for which he was seen at Chabert Medical Center, including uncontrolled hypertension, diabetes, migraine headaches and pain in his lower back, knees, neck and feet, and an overnight hospitalization for chest pain without any objective findings, cause specific functional impairments that prevent Borne from working.

For the foregoing reasons, Borne has not demonstrated a reasonable possibility that the new evidence would change the outcome of the Commissioner's decision.

Moreover, plaintiff has not shown good cause for his failure to submit this or similar evidence at the administrative level. He has submitted no explanation, much less a "proper explanation," why he could not obtain and submit before the ALJ's decision the same type of evaluations from Dr. Shamsnia or that he had at Chabert Medical Center. Leggett, 67 F.3d at 567; Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989).

A medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand." Leggett, 67 F.3d at 567. As for the new evidence, plaintiff

> does not provide a satisfactory explanation for its absence from the initial proceedings. The evidence consists of a new examination taken far outside of the period in which [plaintiff] applied for or was denied benefits. [Plaintiff] offers no evidence that his current [physical] disability did not subsequently develop after his initial application or that it is not the result of the deterioration of a condition that was not previously disabling.

Id. Thus, Borne has failed to carry his burden of providing good cause for the absence of this evidence and may not use the evidence as the basis for a remand.

The new records may constitute evidence that plaintiff's condition has deteriorated since the ALJ's decision.  If Borne has evidence that any of his severe or non-severe impairments became disabling after the ALJ's decision, he can use the evidence to make a new application to the Social Security Administration for benefits for the appropriate time period.  Shave, 238 F.3d at 597; Falco, 27 F.3d at 164 n.20.

Accordingly, plaintiff's motion for leave to submit new evidence is denied.  The court will not consider the proffered new evidence.  For the same reasons, I do not recommend that the case be remanded so that the Commissioner may consider this evidence, which is immaterial to the instant claim under current review.

> 2.    The ALJ did not err by failing to consider adequately how plaintiff's limited educational or intellectual abilities and his inability to read, multiply or divide limit his capacity to perform jobs existing in significant numbers in the national economy.

Borne argues that he is disabled by his functional illiteracy, combined with his physical functional limitations.  Specifically, he contends that substantial evidence does not support the vocational expert's testimony that he could perform the jobs of information clerk, courier and production worker, which he asserts would necessarily require reading skills greater than he possesses.

The ALJ acknowledged plaintiff's "limited education," which the Commissioner defines as a seventh through eleventh grade level of formal education. 20 C.F.R. § 404.1564. The evidence shows that plaintiff completed the ninth grade in special education classes. He told the consultative examiner, internist Gayathri Talluri, M.D., on October 2, 2007 that he knew letters and numbers, could read words of four letters and less, could write his name and could fill out money orders. (Tr. 188). The ALJ found that Borne exaggerated the extent of his alleged inability to read, write or do basic arithmetic, and that no medical evidence corroborated any mental impairment. Borne does not cite to any other evidence to support his allegations.

The vocational expert testified that Borne worked in past relevant jobs that were semi-skilled and skilled. The Commissioner's regulations note that "[p]ast work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education." 20 C.F.R. § 404.1564; see also Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990) (the ALJ properly considered that "the claimant worked for years with and despite impairment(s) that he now alleges are disabling"). The ALJ included plaintiff's limited education and limited ability to read and write in his hypothetical questions to the vocational expert, along with plaintiff's physical limitations, and the vocational expert

testified that such an individual could perform several jobs available in the national economy.

Defendant does not dispute that the job of information clerk might require reading and writing skills greater than Borne possesses. Even assuming that the jobs of information clerk, courier, and production worker require reading and writing skills greater than Borne possesses, the vocational expert's testimony that he could work as a hand packager, food preparer, cafeteria attendant and dishwasher is still substantial evidence upon which the ALJ could rely to find that plaintiff could perform work available in significant numbers in the national economy. 20 C.F.R. § 404.1566(d), (e); Leggett, 67 F.3d at 565; Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995); Villa, 895 F.2d at 1022.

Accordingly, this argument lacks merit.

      3.      The ALJ's determination of plaintiff's residual functional capacity is supported by substantial evidence.

Borne argues that substantial evidence does not support his residual functional capacity to perform the jobs listed by the ALJ. At step four of the sequential evaluation, the ALJ found that plaintiff has the residual functional capacity to perform the full range of light and sedentary work, but cannot perform his past relevant work of deckhand, cook and oiler, which required medium exertion. At step five, the ALJ found that Borne can

perform his past relevant work as a mate and other jobs that are available in significant numbers in the national economy, including information clerk, courier, production worker, hand packager, food preparer, cafeteria attendant and dishwasher. Although not listed specifically in the ALJ's findings, the vocational expert also testified that additional sedentary jobs are available as a hand packager and a security guard.

Substantial evidence supports the ALJ's decision. First, the ALJ found that plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms were not credible. The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 Fed. Appx. 356, 2008 WL 4870980, at *2 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 Fed. Appx. 176, 2009 WL 1904521, at *3 (5th Cir. July 2, 2009) (citation omitted); Bedford v. Astrue, 236 Fed. Appx. 957, 2007 WL 1733132, at *4 (5th Cir. 2007) (citation omitted). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. Falco, 27 F.3d at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163).

Whether pain is disabling is also an issue for the ALJ,

who has the primary responsibility for resolving conflicts in the evidence. It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. Subjective complaints of pain must also be corroborated by objective medical evidence.

Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (citing Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991); James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 622 (5th Cir. 1983); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Houston v. Sullivan, 895 F.2d 1012, 1016 (5th Cir. 1989)).

The ALJ in this case explained that plaintiff's allegations of pain, daily headaches and numbness were not supported by the medical evidence to the extent alleged. The ALJ noted that plaintiff's uncontrolled hypertension and diabetes produced some of these symptoms, which could have been reduced if Borne had been compliant with his medication regime. The record is replete with references to plaintiff's failure to comply with recommended treatment for his hypertension and diabetes. A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling. Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000); Leblanc v.

Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Bridges v. Massanari, No. 00-2639, 2002 WL 202221, at *3 (E.D. La. Feb. 7, 2002) (Vance, J.).

The medical evidence substantially supports the ALJ's findings. A CT scan and an MRI of plaintiff's brain after his head injury on March 29, 2006 showed two tiny hemorrhages, but no structural abnormalities. (Tr. 147, 164). X-rays and MRI testing of plaintiff's right shoulder, cervical spine and lumbar spine showed mild to moderate degenerative changes. (Tr. 146-47, 185, 186, 190). Medication was generally effective in controlling plaintiff's symptoms, when he was compliant with his treatment regimen. (Tr. 183, 215-18, 221, 229, 231-32, 239, 241). Physical examinations in October 2006 through October 16, 2007, including by the consultative examiner, Dr. Talluri, showed that plaintiff was neurologically intact with his motor skills, sensory responses and reflexes all within normal limits. (Tr. 178, 188-91, 229-30, 235-26, 245). Dr. Talluri found that, despite plaintiff's refusal to complete the musculoskeletal examination, he walked with a normal gait, was able to reach the examination table without difficulty and appeared to have normal range of motion in his neck, back, hips and joints. (Tr. 189-90). On May 14, 2009, plaintiff reported to his treating physician that the numbness in his feet and legs had improved after taking the medications prescribed for his hypertension,

diabetes and pain. (Tr. 241). The ALJ, as he was entitled to do, accorded great weight to the findings of Dr. Talluri, which he found were consistent with the other credible evidence from plaintiff's treating physicians. Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

In addition to the findings noted in the preceding paragraph, Dr. Talluri found that plaintiff "would have difficulty performing work that required him to [sic] prolonged standing, bending, stooping, crawling and crouching." (Tr. 190). Borne argues that this statement is inconsistent with the ALJ's finding that plaintiff could perform the full range of light work, which is defined as a job that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, or one that involves very little lifting but requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(a).

The ALJ did not explain in detail how plaintiff's capacity to engage in light work is consistent with Dr. Talluri's finding that Borne cannot perform work that requires prolonged standing. "The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision." Hammond v. Barnhart, 124 Fed. Appx. 847, 2005 WL 548253, at *3 (5th Cir. 2005). "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have

not been affected." Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007); accord Hammond, 2005 WL 548253, at *3 n.10. Here, even if Dr. Talluri's statement could be interpreted as precluding plaintiff from performing light work and even if the ALJ committed a procedural error by failing to so find, Borne still could perform sedentary work within the limitations set forth by Dr. Talluri. A residual functional capacity to perform sedentary work is substantially supported by the medical record and the vocational expert testified concerning significant numbers of sedentary jobs that the claimant could perform.

Plaintiff's argument that the amputation of two fingers on his dominant left hand would prevent him from performing light or sedentary jobs is completely unsupported by the record. The amputation reportedly occurred in 1995. (Tr. 112, 190). Borne worked in medium exertional, semi-skilled jobs for many years after that. Dr. Talluri found in October 2007 that Borne had normal grip strength bilaterally and full use of the pincers of both hands. (Tr. 190).

Accordingly, this assignment of error lacks merit.

4. The ALJ's finding that plaintiff could perform the job of mate is supported by substantial evidence.

Borne contends that the ALJ's finding that he could perform his past relevant job of mate is not supported by substantial evidence because neither the ALJ, the vocational

expert nor the Dictionary of Occupational Titles explained what skills are needed for the job of mate. He argues that the record does not support his own Disability Report submitted at the initial administrative level that he worked as a mate on a "lugger boat"[4] from June 26 through July 30, 2006. (Tr. 107-08). He asserts, without citing to any record evidence, that "the record . . . suggest[s] his job was really just another job as a 'deckhand.'" Plaintiff's Memorandum of Facts and Law, Record Doc. No. 15, at p. 10. Ultimately, Borne asserts that he lacks the intellectual and educational skills necessary to perform the skilled job of mate.

Again, the vocational expert's testimony concerning the exertional level and skills required of a mate is substantial evidence on which the ALJ may properly rely. Leggett, 67 F.3d at 565; Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995); Villa, 895 F.2d at 1022. Contrary to plaintiff's argument, the Dictionary of Occupational Titles describes the duties of a mate aboard a fishing vessel, ship and tugboat. Dictionary of Occupational Titles § 197.133-018, 1991 WL 671622 (4th ed. rev. 1991); id. § 197.133-022, 1991 WL 671623; id. § 197.133-034, 1991 WL 671626. Plaintiff stated

_____

[4]It appears from reported cases in the Fifth Circuit that a lugger boat is typically used to deliver equipment, personnel and other items to offshore oil production platforms, Munguia v. Chevron U.S.A. Inc., 999 F.2d 808, 812 (5th Cir. 1993); Gauthier v. Crosby Marine Serv., Inc., 752 F.2d 1085, 1087 (5th Cir. 1985), or in oyster or shrimp fishing. Barthelemy v. Phillips Petroleum Co., No. 96-2226, 1999 WL 65024, at *1 (E.D. La. Feb. 9, 1999); Alamia v. Chevron Transp. Corp., 660 F. Supp. 1123, 1124 (S.D. Miss. 1987).

on his Disability Report that he was paid $150 per day for his work as a mate in 2006, while he was paid $100 per day as a deckhand in 2005. This raise in pay indicates that he was performing work as a mate that was more valuable than his work as a deckhand.

Thus, substantial evidence in the record supports the ALJ's finding that plaintiff could perform his past relevant work as mate, which is a finding at step four of the sequential evaluation. The ALJ nonetheless proceeded to step five and found, based on substantial evidence as discussed in the preceding section of this report and recommendation, that other jobs exist in significant numbers that plaintiff can perform. Thus, even if the ALJ erred in his step four finding, that error was harmless and plaintiff's substantial rights were not affected when the ALJ's finding of non-disability at a later step is supported by substantial evidence.

## CONCLUSION

The ALJ did not fail to consider adequately how plaintiff's limited educational or intellectual abilities limit his capacity to perform jobs existing in significant numbers in the national economy. Substantial evidence supports the ALJ's findings concerning Borne's residual functional capacity and the availability of jobs that he can perform.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___29th___ day of June, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE